Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| Cooperativa de Dueños de Laboratorios Privados de Puerto Rico<br><br>**Recurrida**<br><br>V.<br><br>First Medical Health Plan, Inc.; MMM Healthcare, LLC.; Plan de Salud Menonita; Triple-S Salud, Inc.<br><br>**Recurrente** | KLRA202500206 | REVISIÓN Procedente del Administración de Seguros de Salud de Puerto Rico<br><br>Querella Núm. 23-PV-01-797 consolidada con: 23-PV-01-798: 23-PV-01-799: 23-PV-01-800<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Juez Lebrón Nieves[1].

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 22 de mayo de 2025.

El 7 de abril de 2025, First Medical Health Plan, Inc. (First Medical o recurrente), compareció ante nos mediante *Recurso de Revisión Judicial* y solicitó la revisión de una *Resolución Final* que se emitió el 17 de diciembre de 2024, y notificó el 18 de diciembre de 2024, por la Administración de Seguros de Salud (ASES). Mediante el aludido dictamen, la ASES declaró Ha Lugar la *Querella* Núm. 23-PV-01797 (consolidada con las querellas: 23-PV-01898, 23-PV-01899, y 23-PV-01800), que presentó la Cooperativa de Dueños de Laboratorios Privados de Puerto Rico (COOPLAB o la parte recurrida).

Por los fundamentos que discutiremos a continuación, ***confirmamos*** el dictamen recurrido.

---

[1] *Véase*, Orden Administrativa Núm. OATA-2025-082. Debido a la inhibición de la Hon. Beatriz M. Martínez Cordero, se designa a la Hon. Gloria L. Lebrón Nieves, en su sustitución, para entender y votar.

**I.**

El 31 de enero de 2024, la COOPLAB presentó una *Querella* en contra de First Medical sobre cobro de dinero.[2] Allí, alegó que, desde el 1 de enero de 2021, First Medical no había cumplido con la *Carta Normativa 20-04-01 de Códigos de Procedimientos de Laboratorios* para la detección del COVID-19, ni con la *Carta Normativa 20-1110 de Procedimientos de Laboratorios para la detección del COVID-19* en la cubierta del Plan de Salud del Gobierno de Puerto Rico (Plan Vital).

Indicó que en las cartas normativas se detallaban los códigos de los procedimientos (CPT) para las pruebas de laboratorios y las tarifas adoptadas por la ASES basadas en los códigos y tarifas del *Center for Medicaid and Medicare* (CMS) vigentes al momento de la emisión de la Orden. Así, sostuvo que, a partir del 11 de mayo de 2023, como resultado de la eliminación del estado de emergencia del COVID-19, CMS instruyó sobre la eliminación de los CPTs G2034 y G2024, los cuales eran utilizados para la colección de especímenes o toma de muestra.

Ante ello, esbozó que la ASES envió la Carta Normativa 23-0609, en la que informó que, para sustituir los CPTs G2023 y G2024 para la toma de muestras, se utilizarían los códigos 99001 y 99211. No obstante, adujo que First Medical no había pagado por los CPTs 99001 ni 99211 desde el 12 de mayo de 2023 hasta el presente. Por lo cual, sostuvo que, para el 15 de octubre de 2023, la cuantía adeudada por el recurrente a COOPLAB ascendía a $244,729.68. Además, señaló que la cuantía adeudada no era final y seguía incrementado según se ofrecía los servicios a los pacientes participantes del Plan Vital.

---

[2] *Véase*, págs. 1-4 del apéndice del recurso.

El 17 de junio de 2024, el Oficial Examinador de la ASES emitió una *Orden de Consolidación.*[3] Mediante esta, consolidó los casos 23-PV-01898, 23-PV-01899 y 23-PV-01800 con el caso presente, *Cooperativa de Dueños de Laboratorio Privados de Puerto Rico v. First Medical,* 23-PV-01797. Fundamentó su decisión en la necesidad de evitar resultados inconsistentes en disputas con cuestiones similares de hecho o de derecho.

De igual forma, expresó que el recurrido sostuvo que no existían controversias de hecho, sino que la controversia se centraba en la interpretación de la normativa de ASES. Por virtud de lo anterior, le concedió a COOPLAB hasta el 15 de julio de 2024 para presentar su alegato y, posteriormente, las aseguradoras tendrían hasta el 30 de julio de 2024 para expresar su postura.

El 15 de julio de 2024, COOPLAB presentó su *Alegato Especificando el Reclamo en la Querella de COOPLAB en su Interpretación de la Normativa de ASES.*[4] En primer lugar, alegó que las querellas consolidadas tenían el propósito de que se determinara si las aseguradoras bajo el Plan Vital habían cumplido con varias cartas normativas y circulares de ASES en atención a la emergencia creada por el COVID-19. No obstante, indicó que:

> [E]n este Alegato solamente se contempla aclarar la petición de COOPLAB en su querella respecto al uso de los CPT para las pruebas y tomas de muestra. No se entra en la discusión de otros aspectos que hemos abordado en otros escritos en respuesta a réplicas de las querelladas.

Dicho esto, señaló que las cartas referenciadas abordaban dos asuntos medulares: (1) la codificación para utilizar en las pruebas y tomas de muestras de servicios relacionados a COVID-19; (2) y el pago a los proveedores (laboratorios clínicos) por dichos servicios. A tales efectos, sostuvo que las aseguradoras habían incumplido con

---

[3] Íd., págs. 5-6.
[4] Íd., págs. 7-19.

reconocer el uso y pago de los códigos establecidos por ASES a través de la pandemia, y una vez finalizado el estado de emergencia hasta el presente.

El 30 de julio de 2024, el recurrente presentó la *Contestación a Alegato especificando el reclamo en la Querella de COOPLAB en su interpretación de la normativa de ASES.*[5] En lo pertinente, alegó que, conforme a las instrucciones de la ASES en su *Carta Normativa 23-0609 enmendada* A del 14 de julio de 2023,[6] se eliminó toda referencia a los CPTs 99211 y 99001. Señaló que los mencionados CPTs no eran códigos que describían servicios provistos en un laboratorio, por lo que era imposible adjudicar un pago a un laboratorio por un servicio que no podían proveer.

De igual forma, sostuvo que conforme con la American Medical Association (AMA) los códigos de evaluación y manejo no eran aplicables para las pruebas de diagnóstico. A tales efectos, citó lo siguiente:

> *Evaluation and management (E/M) coding and billing are crucial to maintaining the efficiency and productivity of a medical practice today. E&M coding involves use of CPT codes ranging from 99202 to 99499. These represent services by a physician (or other health care professional) in which the provider is either evaluating or managing a patient's health. Procedures such as **diagnostic tests, radiology, surgeries and other particular therapies are not considered evaluation and management services.***

Indicó que lo previamente citado incluía el CPT 99211. Por ende, planteó que, si las guías de la AMA excluían expresamente el uso de estos códigos de evaluación y manejo para los laboratorios, sería contrario a derecho conceder lo solicitado por COOPLAB.

---

[5] Íd., págs. 47-96.

[6] Es menester señalar que la Carta Normativa 23-0609 enmendada A dispone lo siguiente: Como resultado de la eliminación del estado de emergencia, efectivo el 11 de mayo de 2023, CMS eliminó los códigos [**G2023** y **G2024**] antes mencionados y determinó que estos no serán pagaderos, De igual manera los códigos de laboratorio **U0003, U0004, U0005,** serán eliminados, Por lo tanto, la ASES informa a las organizaciones y proveedores del Plan Vital que los códigos previamente indicados no serán considerados bajo el Plan Vital. En su lugar se deberán utilizar aquellos códigos de evaluación y manejo para la recolección de pruebas de COVID dictados por la *American Medical Association* (AMA) en las guías del *Current Procedural Terminology* (CPT). Íd., pág. 64.

En cuanto al CPT 99001, esbozó que este código se utilizaba cuando la muestra era tomada fuera de un laboratorio y, posteriormente, se enviaba al laboratorio para su correspondiente análisis. En virtud de lo anterior, adujo que los CPTs referenciados no eran aplicables a los laboratorios, a tenor con lo establecido por la AMA. Por lo cual, manifestó que First Medical no le adeudaba cuantía alguna al recurrido y que este no había puesto en posición a la ASES para que pudiera determinar lo contrario.

El 9 de octubre de 2024, el Oficial Examinador emitió una *Orden*.[7] Mediante esta, ordenó a la ASES que expresara su posición respecto a la reclamación de COOPLAB. El 12 de noviembre de 2024, ASES presentó su *Moción en cumplimiento de Orden*.[8] Indicó que los códigos a utilizarse luego del 11 de mayo de 2023 para la evaluación y manejo de recolección de pruebas COVID-19 según establecidos por la AMA en las guías del CPT eran los siguientes:

> 36415 – Collection of Venous Blood venipuncture.
>
> 99001 – Handling and/or conveyance of specimen for transfer from the physician office to laboratory.
>
> 99211 – Office or other outpatient visit for the evaluation and management of an established patient that may not require the presence of a physician.

El 2 de diciembre de 2024, el recurrente presentó su *Moción en cumplimiento de Orden y posición de First Medical sobre la "Moción en cumplimiento de Orden" de ASES*.[9] Alegó que la AMA era la asociación que establecía el proceso de facturación mediante una serie de códigos, los cuales se revisaban y publicaban anualmente. Señaló que, según dichas publicaciones, el CPT 99001, se definía por la AMA como "handling and/or conveyance of specimen for transfer from patient in other than an office to a laboratory (distance may be indicated)". Razonó que, a tenor con dicha definición, el CPT 99001 no podía ser facturado por un laboratorio, toda vez que las

---

[7] Íd., págs. 97-98.
[8] Íd., págs. 99-101.
[9] Íd., págs. 103-110.

guías de la AMA explícitamente asignan el código para el proceso de manejo y transporte hacia el laboratorio.

Sobre el CPT 99211, alegó que este era definido por la AMA como "Office or other outpatient visit for the evaluation and management of an established patient that may not require the presence of a physician". Sostuvo que aludido código era asignando en las guías de la AMA como un CPT que se debía utilizar en la evaluación y manejo de un paciente y que dicho proceso no se llevaba a cabo por un laboratorio. Así, señaló que la AMA específicamente disponía lo siguiente:

> In the evaluation and management section (99202-99499), there are many code categories. Each category may have specific guidelines, or the codes may include specific details. These E/M guidelines are written for the following categories:
>
> • Office or other Outpatient Services
> • Hospital Inpatient and Observation Care Services
> • Consultations
> • Emergency Department Services
> • Nursing Facility Services
> • Home or Residence Services
> • Prolonged Services with or without Direct Patient Contact.

Establecido lo anterior, adujo que los dos mencionados CPTs no aplicaban a los laboratorios debido a que estos no realizaban un examen del estado de salud del paciente y sus síntomas, ni realizaban el manejo y transporte de los especímenes.

El 3 de diciembre de 2024, el Oficial Examinador presentó su *Informe y Recomendación.*[10] Esbozó que la *Carta Normativa 23-0609-Enmendada B*, emitida el 1 de agosto de 2024 por la ASES, aclaró cualquier duda sobre el pago por la recolección de pruebas de COVID-19 desde la eliminación del estado de emergencia. Por tanto, indicó que los términos de dicha carta eran los que se debían seguir para reclamar y emitir cualquier pago. De igual forma, sostuvo que la determinación de extender el uso de los códigos 99211 y 99001

---

[10] Íd., págs. 118-123.

mediante la referida carta era particular a la ASES y aplicable a las partes de la querella de epígrafe.

El 18 de diciembre de 2024, ASES emitió una *Resolución Final*.[11] Mediante esta, acogió el informe presentado por el Oficial Examinador y lo formó parte integral del dictamen. En consecuencia, declaró Ha Lugar la *Querella* presentada por COOPLAB.

Inconforme, el 7 de enero de 2025, First Medical presentó su *Moción en Reconsideración*.[12] Allí, alegó que el CMS-5531-IFC citado en el *Informe* del Oficial Examinador no estableció que el CPT 99211 podía facturarse por los proveedores de laboratorios. Además, indicó que el CPT 99001 solo podía facturarse por un profesional que transporta el espécimen y, ni en el *Informe* ni en la *Resolución* se fundamenta porque un proveedor de laboratorio podría facturar dicho servicio. No obstante, el 7 de marzo de 2025, atendido el escrito del recurrente, la ASES la declaró No Ha Lugar.[13]

Aún inconforme, el 7 de abril de 2025, First Medical presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> **Erró ASES al declarar "No Ha Lugar" la Moción de Reconsideración de First Medical y en consecuencia sostener que los CPT´s 99211 y 99001 pueden ser utilizados por proveedores de Laboratorios Clínicos para facturar por servicios de recolección de pruebas de Covid-19.**

Atendido el recurso, el 9 de abril de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 7 de mayo de 2025 para presentar su alegato. El 30 de abril de 2025, el recurrido presentó su *Alegato en Oposición* y negó que la ASES hubiera cometido el error que First Medical le atribuyó. Por otra parte, el 7 de mayo de 2025, ASES presentó su *Oposición a la Expedición del Recurso de Revisión Judicial*.

---

[11] Íd., págs. 116-123.
[12] Íd., págs. 124-139.
[13] Íd., págs. 156-159.

Con el beneficio de la comparecencia de las partes, procedemos a resolver el asunto ante nos. *Veamos.*

**II.**

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas se tomaron dentro de los poderes delegados y si son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra,* pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. Íd.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Graciani Rodríguez v. Garaje Isla Verde, supra*, pág.128. Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR,* 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd. Ello, aun cuando exista

más de una interpretación posible en cuanto a los hechos. Íd., pág. 628. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

**III.**

En el presente recurso, el recurrente nos solicitó la revocación de la *Resolución Final* que la ASES emitió el 17 de diciembre de 2024. Mediante su único señalamiento de error, indicó que la ASES incidió al determinar que los CPTs 99001 y 99211 podían ser utilizados por proveedores de laboratorios clínicos para facturar por servicios de recolección de prueba de COVID-19. Particularmente, alegó que según la definición del CPT 99001 este debía facturarse cuando el paciente recibía el servicio en otro lugar que no fuese la oficina del médico y se enviara el espécimen al laboratorio. Ante ello, esgrimió que dicho CPT no podía ser facturado cuando la recolección de la prueba de COVID-19 se realizaba en un laboratorio.

En cuanto al CPT 99211, sostuvo que este se utilizaba en la evaluación y manejo de un paciente, lo cual no se podía llevar a cabo por un laboratorio. Así, indicó que la AMA excluía explícitamente de los códigos de evaluación y manejo las pruebas de diagnóstico. Además, señaló que la CMS no incluyó los códigos en controversia en el tarifario de los CPTs que podían facturar los proveedores de laboratorios clínicos. Por tanto, razonó que los CPTs 99001 y 99211 no aplicaban a los laboratorios clínicos.

Por su parte, COOPLAB argumentó que era la ASES quien determinaba como se aplicaban los códigos de los CPTs, las políticas de tarifas y las políticas de pagos. Por ende, manifestó que las aseguradoras tenían que cumplir con las directrices de ASES y

procedía pagar a los laboratorios clínicos tanto el servicio de toma de muestra, así como el pago correcto del análisis.

Por su lado, ASES arguyó que First Medical falló en rebatir el principio de deferencia judicial a las determinaciones de agencias administrativas. Señaló que el recurrente no estableció que la ASES se hubiera alejado de sus poderes delegados, que hubiera actuado de manera arbitraria, caprichosa o ilegal, o que su determinación no estuviera basada en evidencia sustancial. A su vez, alegó que First Medical no satisfizo los requisitos de legitimación activa para recurrir del dictamen, ya que no demostró un perjuicio real, efecto adverso o desfavorable a sus intereses. Explicó que, posterior a la finalización del estado de emergencia, la ASES ha incluido el costo de las pruebas COVID-19 en el pago de la prima PMPM[14] pagada a las aseguradoras mensualmente. Por lo cual, aseveró que el pago a los laboratorios bajo los códigos informados por la ASES no afectaba los intereses del recurrente.

En el caso de autos, el 17 de junio de 2024, el Oficial Examinador emitió una *Orden* mediante la cual ordenó a COOPLAB presentar un alegato sobre las controversias de epígrafe.[15] En cumplimiento de dicha orden, la parte recurrida presentó su alegato el 15 de julio de 2024. Atendido el escrito de COOPLAB, así como sus respectivas réplicas, la ASES determinó que la *Carta Normativa: 23-0609-Enmendada B* aclaró cualquier duda sobre el pago por la recolección de pruebas de COVID-19 desde la eliminación de la emergencia el 11 de mayo de 2023. De igual forma, el dictamen impugnado concluyó que la determinación de extender el uso de los códigos 99211 y 99011 mediante la referida carta era particular de la ASES y aplicable a las partes del epígrafe.

---

[14] Per Member Per Month.
[15] *Véase,* págs. 5-6 del apéndice del recurso.

Dicho lo anterior, para disponer del presente recurso, resulta imprescindible citar las definiciones de los CPTs en controversia conforme a la AMA. A tales efectos:

> 99001 - handling and/or conveyance of specimen for transfer from patient in other than an office to a laboratory (distance may be indicated).[16]

> 99211 - Office or other outpatient visit for the evaluation and management of an established patient that may not require the presence of a physician or other qualified health care professional.[17]

Un análisis del texto de los referidos códigos nos lleva a concluir que estos pueden ser utilizados por los proveedores de laboratorios clínicos. En primer lugar, el CPT 99001 describe un servicio de manipulación y(o) transporte de muestras tomadas a un paciente fuera de un consultorio para ser enviadas a un laboratorio. Como se puede apreciar, esta definición no excluye a los laboratorios clínicos de facturar por dicho código. Por el contrario, el CPT 99001 es facturable cuando el servicio provisto es conforme a su definición sin distinción de entidad.

En cuanto al CPT 99211, este se utiliza para describir una visita de evaluación y manejo de un paciente, el cual no requiere la presencia de un médico u otro profesional de salud cualificado. El recurrente, para argumentar la inaplicabilidad de dicho código a los proveedores de laboratorios clínicos, nos trajo a nuestra atención lo siguiente:

> In the evaluation and management section (99202-99499), there are many code categories. Each category may have specific guidelines, or the codes may include specific details. These E/M guidelines are written for the following categories:
>
> •Office or other Outpatient Services
> •Hospital Inpatient and Observation Care Services
> •Consultations
> •Emergency Department Services
> •Nursing Facility Services
> •Home or Residence Services

---

[16] *Véase*, págs. 32-33 del apéndice del recurso.
[17] Id., 36-37.

•Prolonged Services with or without Direct Patient Contact.

No obstante, examinado el texto de la cita no encontramos que la misma prohíba a los laboratorios utilizar el CPT 99211. En cambio, entendemos que los servicios provistos por la parte recurrida caerían dentro de *"other Outpatient Services"*. Por tanto, concluimos que ASES no incidió al determinar que los CPT 99001 y 99211 eran aplicables a los proveedores de laboratorios clínicos.

## IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones